# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Robert E. Blackburn

Civil Action No. 17-cv-01203-REB

PAT R. CORRAL,

      Plaintiff,

v.

NANCY BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,[1]

      Defendant.

---

## ORDER AFFIRMING DEPUTY COMMISSIONER

---

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[2] filed May 16, 2017, seeking review of the Deputy Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Deputy Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of a right knee disorder, chronic liver disease, a history of traumatic brain injury with associated headaches and

---

[1] On March 6, 2018, the Government Accountability Office determined that Nancy Berryhill's continuing status as Acting Commissioner of Social Security violated the Federal Vacancies Reform Act, and therefore that she was not authorized to continue serving as Acting Commissioner after November 16. Until such time as a successor is nominated and confirmed, Ms. Berryhill appears as the Deputy Commissioner of Operations for the agency.

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

dizziness, a seizure disorder, anxiety, and affective disorder.  After his application for

supplemental security income benefits was denied, plaintiff requested a hearing before

an administrative law judge.  This hearing was held on July 29, 2015.  At the time of the

hearing, plaintiff was 36 years old.  He has a high school education and past relevant

work experience as a case packer, food sorter, and newspaper carrier.  He has not

engaged in substantial gainful activity since at least June 27, 2013, the date of his

application for benefits.

The ALJ found plaintiff was not disabled and therefore not entitled to

supplemental security income benefits.  Although the evidence established plaintiff's

right knee disorder and chronic liver disease constituted severe impairments, the judge

concluded the severity of those impairments did not meet or equal any impairment listed

in the social security regulations.  The remainder of plaintiff's other alleged impairments

were found to be non-severe.  The ALJ concluded plaintiff had the residual functional

capacity to perform a full range of medium work with no environmental, postural,

manipulative, or non-exertional restrictions.  Because this finding did not preclude

plaintiff's past relevant work, the ALJ found him not disabled at step four of the

sequential evaluation.  Alternatively, the ALJ concluded there were jobs existing in

significant numbers in the national and local economies he could perform.  He therefore

also found plaintiff not disabled at step five.  Plaintiff appealed this decision to the

Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his

physical and/or mental impairments preclude him from performing both his previous

work and any other "substantial gainful work which exists in the national economy." 42

U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Deputy Commissioner] to consider the combined effects of

the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d

1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(c). However, the mere

existence of a severe impairment or combination of impairments does not require a

finding that an individual is disabled within the meaning of the Social Security Act. To

be disabling, the claimant's condition must be so functionally limiting as to preclude any

substantial gainful activity for at least twelve consecutive months. *See Kelley v.*

*Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

The Deputy Commissioner has established a quinquepartite sequential

evaluation process for determining whether a claimant is disabled:

> 1.    The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

> 2.    The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

> 3.    The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

> 4.    If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

> 5.    If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the

claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(a)(4)(i)-(v). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Deputy Commissioner to show the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Deputy Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Although a reviewing court should meticulously examine the record, it may not reweigh

the evidence or substitute its discretion for that of the Deputy Commissioner. *Id.*

## III. LEGAL ANALYSIS

Plaintiff alleges multiple errors at steps two, four, and five of the sequential

evaluation. Perceiving no error in the ALJ's resolution of plaintiff's disability

determination, I affirm.

Plaintiff first suggests the ALJ erred at step two by finding that traumatic brain

injury, headaches, seizure disorder, anxiety, and affective disorder were not severe

impairments. The ALJ's determination that these various alleged impairments were not

severe was made after a thorough and cogent discussion of the medical evidence of

record.[3] (Tr. 10-12.) Yet even if there were some error in this determination, any such

error ultimately was rendered harmless when the ALJ found other impairments severe

and proceeded to the subsequent steps of the sequential analysis. *See Dray v.*

*Astrue*, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009) (because "step two is

designed 'to weed out at an early stage of the administrative process those individuals

who cannot possibly meet the statutory definition of disability,'" "the failure to find a

particular impairment severe at step two is not reversible error as long as the ALJ finds

that at least one other impairment is severe") (quoting *Bowen v. Yuckert*, 482 U.S.

137, 156, 107 S.Ct. 2287, 2298, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring)).

Plaintiff's argument in this regard therefore must be rejected.

---

[3] Although a claimant's burden to prove severity is *de minimis*, **Hawkins v. Chater**, 113 F.3d 1162, 1169 (10th Cir. 1997), the standard is not toothless, **Harrison v. Colvin**, 2014 WL 82124 at *3 (D. Colo. March 6, 2014). Specifically, plaintiff must establish that any alleged impairment constitutes more than a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." **Social Security Ruling** 85-28, 1985 WL 56856 at *3 (SSA 1985).

Plaintiff maintains the ALJ nevertheless failed to consider the impact of these non-severe impairments in assessing his residual functional capacity. *See* 20 C.F.R. § 416.945(a)(2). **Social Security Ruling** 85-28, 1985 WL 56856 at *1–2 (SSA 1985).[4] In a barely developed argument (*see* **Plf. Brief** at 19), plaintiff vaguely alludes to an assessment performed by physician assistant Daryl Lacy in March 2015 (*see* Tr. 633-634) and unspecified records from Southeast Health Group (Tr. 642-651). It is not clear how plaintiff believes these records show any error in the ALJ's consideration of his non-severe impairments in formulating plaintiff's residual functional capacity, and this court is neither required nor inclined to construct such arguments on his behalf. *Corral v. Colvin*, 2016 WL 1170216, at *2 (D. Colo. Mar. 25, 2016) ("By the same token, a party's failure to point the court to evidence in the record which supports its motion creates no duty in the court to make that party's case for it."). No reversible error has been shown to have occurred in this regard.

Plaintiff next contends the ALJ failed to give appropriate weight to the opinions of his treating sources. Insofar as this argument is based on the supposed opinion of Mr. Lacy, it fails at the outset, as the record contains no such opinion. A medical opinion is a statement from an "acceptable medical source[] that reflect[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental

---

[4] While it is true that the ALJ may not simply rely on his finding of non-severity as a proxy for a proper residual functional capacity analysis, *see Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013), neither must his step two findings necessarily be translated into work-related functional limitations at step four, *see Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *Suttles v. Colvin*, 543 Fed. Appx. 824, 826–27 (10th Cir. 2013). *See also Manning v. Colvin*, 182 F Supp.3d 1156, 1164 (D. Colo. 2016). The ALJ's careful and detailed parsing on the evidence before him in this case belies any notion that he failed in this respect.

restrictions." 20 C.F.R. 416.927(a)(1).  Although it appears Mr. Lacy did assess plaintiff

for consideration of benefits under the Aid for the Needy Disabled (AND) program, the

appropriate form (called the "Med-9" form) certifying whether and to what extent plaintiff

might be considered disabled for purposes of that program is not part of the record

before me.[5]  There thus was no opinion for the ALJ to consider and weigh.[6]

Although plaintiff refers to Melody Cannon, BA, as a treating source, she is not.

A treating source is one with whom claimant has "ongoing treatment relationship," that

is, "with a frequency consistent with accepted medical practice for the type of treatment

and/or evaluation required for [his] medical condition(s)").  20 C.F.R. § 416.902.[7]  ***See***

***also Pacheco v. Colvin***, 83 F.Supp.3d 1157, 1163 (D. Colo. 2015); ***Megginson v.***

***Astrue***, 2011 WL 4382570 at *3 n.3 (D. Colo. Sept. 20, 2011), ***aff'd***, 489 Fed. Appx.

260 (10th Cir. 2012).  Ms. Cannon saw plaintiff once when he first sought treatment for

anxiety and depression in January 2015 in connection with his claim for benefits.  (Tr.

643-650.)  That type of fleeting interaction is insufficient to confer treating source status

on Ms. Cannon, even if she were an acceptable medical source.

---

[5]  Instead, Mr. Lacy's assessment merely noted plaintiff suffered from headaches, anxiety, knee
pain, and alcoholic cirrhosis of the liver and reported plaintiff was given certain medications for anxiety and
headaches, a knee brace, and a referral to gastroenterology for follow up of cirrhosis.  (Tr. 620, 633-634.)

[6]  Here again, I decline plaintiff's implicit invitation to peruse the "longitudinal record" for evidence
– which he himself has not seen fit to cite –  that allegedly supports Mr. Lacy's "opinion."  ***See***
***Abdelmeged v. Colvin***, 2015 WL 5047645 at *6 (D. Colo. Aug. 26, 2015) .

[7]  In addition, only an acceptable medical source may issue medical opinions and be considered a
treating source whose opinion must be evaluated in terms of whether it is entitled to controlling weight.
***Zagorianakos v. Colvin***, 81 F.Supp.3d 1036, 1043 (D. Colo. 2015).  ***See also*** 20 C.F.R. § 416.927(a)(2);
**Social Security Ruling** 06-03p, 2006 WL 2329939 at *2 (SSA Aug. 9, 2006).  Although it is not clear if the
initialism "BA" in Ms. Cannon's title signifies anything specific in the medical or psychiatric fields, it
certainly is not among the well-recognized credentials given to a doctor of medicine, psychiatry, or
psychology.

While it is true the ALJ did not mention Ms. Cannon's assessment of a Global Assessment of Functioning score of 31 (Tr. 649), that standard – derived from the American Psychiatric Association's ***Diagnostic and Statistical Manual of Mental Disorders*** (Text Revision 4th ed. 2000) ("DSM–IV") – has been abandoned in the most current version of the DSM ("DSM-V"), published in 2013, due to its "lack of clarity" and "questionable psychometrics." ***Summers v. Social Security. Administration***, 2016 WL 10538644 at *9 (D.N.M. Mar. 22, 2016) (citing DSM-V at 16 (5th ed. 2013)), ***adopted***, 2016 WL 10538643 (D.N.M. Apr. 14, 2016).[8]

Even when it was in use, however, the GAF score was not binding on the Deputy Commissioner, but merely constituted one piece of evidence to be considered. ***Petree v. Astrue***, 260 Fed. Appx. 33, 42 (10th Cir. Dec. 28, 2007). The ALJ thoroughly discussed the content of Ms. Cannon's report (Tr. 13), as well as plaintiff's overall history of anxiety and affective disorder (Tr. 12). In particular, the ALJ noted that despite plaintiff's complaints, he was discharged from therapy barely two months after being evaluated by Ms. Cannon for cancelling or failing to appear for appointments and neglecting to return calls to reschedule. (Tr. 13-14, 651.) The ALJ also noted plaintiff reported his anxiety was well-controlled with medications just a month after being discharged from therapy. (Tr. 13, 616.) There thus was no reversible error in failing to afford any particular weight to Ms. Cannon's opinion as reflected in the GAF score.

---

[8] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" ***Langley v. Barnhart***, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) (quoting American Psychiatric Association, **Diagnostic and Statistical Manual of Mental Disorders** at 32 (Text Revision 4th ed. 2000) ("**DSM–IV**")). A GAF of 31 to 40 indicates the individual has an "impairment in reality testing or communication . . . or [a] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." **DSM–IV** at 32.

Finally, the ALJ did not err in his assessment of plaintiff's credibility.[9]
"[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should
not be upset if supported by substantial evidence."  **White v. Barnhart**, 287 F.3d 903,
909 (10th Cir. 2001) (citing **Kepler v. Chater**, 68 F.3d 387, 390–91 (10th Cir. 1995)).
So long as the ALJ links his credibility assessment to specific evidence in the record, his
determination is entitled to substantial deference.  **Id.** at 910; **see also Qualls v. Apfel**,
206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff's entire argument in this regard consists of the bald statement that the
ALJ failed to consider objective medical evidence.  (**See Plf. Br.** at 15.)  That vague and
unsubstantiated suggestion is thoroughly belied by the record.  The ALJ discussed in
detail not only the relatively mild objective medical findings (Tr. 16-17), but also
plaintiff's substantial, largely unimpeded activities of daily living (Tr. 16) and the efficacy
of, and lack of any side effects attributable to, the medications plaintiff took to treat his
impairments (Tr. 18).  These all are appropriate considerations in assessing a
claimant's credibility.  **See** 20 C.F.R. § 416.929(c)(3)(iv) (type, dosage, effectiveness,
and side effects of medications taken); **Ghini v. Colvin**, 82 F.Supp.3d 1224, 1234 n.11
(D. Colo. 2015) (activities of daily living); **Abdelmeged v. Colvin**, 2015 WL 5047645 at
*5 (D. Colo. Aug. 26, 2015) (lack of objective medical evidence).  No error, much less
reversible, occurred in this regard.

---

[9]  Plaintiff's allegations of error at step five of the sequential evaluation are moot, as the ALJ's
step four finding that plaintiff could return to his past relevant work is more than adequately supported by
the record.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Deputy Commissioner

through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated May 23, 2018, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge